UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

VAUGHN S. WATROUS

v.                                                                        C.A. No. 09-599 S

WARDEN T. SALISBURY, JR. ET AL.

## REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff, Vaughn S. Watrous, *pro se*, a former detainee at the Donald W. Wyatt Detention Facility ("Wyatt") and current inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint in this Court pursuant to 42 U.S.C. § 1983 ("§ 1983") on December 10, 2009 (the "Complaint") (Dckt. # 1). Plaintiff alleges that defendants, six named and one unnamed current or former Wyatt administrators and officers (collectively, "Defendants"), violated his civil rights in connection with (i) the debiting of his Wyatt prisoner account fund ("Wyatt account") for a commissary purchase he never received; (ii) the application of funds in his Wyatt account to pay restitution for the damage he allegedly did not cause; and (iii) the loss of his personal property after he was transferred to the ACI.

As Plaintiff is proceeding *in forma pauperis* in this action, I have screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2) ("1915(e)(2)"). Having found that the Complaint fails to state a claim on which relief may be granted under § 1983, I have prepared this Report and Recommendation to recommend that the Complaint be DISMISSED.

## BACKGROUND

I. **Property Damage Charge and Restitution Payment**

In the Complaint and papers attached thereto,[1] which are taken as true for the purposes of this screening, Plaintiff primarily alleges that Defendants "stole" the funds in his Wyatt account in connection with a property damage charge against him. Specifically, Plaintiff alleges that, on August 11, 2009, the day he was transferred to the ACI, Defendant disciplinary supervisor Gauvin filed a Notice of Hearing charging Plaintiff with vandalizing his cell and "causing damage to the facility in excess of $100," a B-05 offense. Dckt. # 4-1, p.2 (Notice of Hearing).

---

[1] The documents attached to the Plaintiff's motion titled "Return of Property" (Dckt. # 4) are considered part of the Complaint because, although they were docketed separately, such documents are referred to in the Complaint as being attached to the Complaint.

1

Defendant Gauvin did not serve Plaintiff with this Notice of Hearing. On the same day, the balance of the funds in Plaintiff's Wyatt account ($1089.05) was frozen.

Plaintiff further states that on August 20, 2009, Defendant Captain Christopher Coburn conducted a cursory investigation of the vandalism charges against Plaintiff and filed a Disciplinary Report against Plaintiff. The Disciplinary Report stated, in part:

> On August 11, 2009 Detainee Watrous was transferred from the facility due to his destructive and disruptive conduct. An immediate assessment of cell G-05 was conducted and Detainee Watrous was found to have caused the following damage. He used a makeshift candle to melt the polycarbonate light cover in the cell. He damaged the plexi-glass cell window by scratching an obscene suggestion into it. He ripped the handicap railing off the toilet. He bent the food port trap causing it to have to be replaced. He destroyed the cell mirror and triggered the sprinkler head in the cell, causing it to have to be replaced. The cell damage caused by Detainee Watrous was repaired at significant cost to the facility. The total cost including labor to repair the damage was $1159.62. The facility is seeking restitution from Detainee Watrous for the damage to the cell.

*Id.* at p. 5 (Disciplinary Report).

Later on August 20, 2009, Defendants Major Botelho and disciplinary supervisor Gauvin held a disciplinary hearing related to the vandalism charges. The disciplinary hearing was held in absentia, as Plaintiff was at the ACI at the time of the hearing, and Plaintiff did not sign a waiver agreeing to a hearing in his absence. According to the Disciplinary Report of the hearing, a not guilty plea was entered on Plaintiff's behalf, but, based on staff reports, shift commander notes, photographs, and staff accounts, Plaintiff was found guilty and ordered to pay restitution of $1159.62. *Id.* Thereafter, Defendant Warden Wayne Salisbury approved the finding. And, on October 9, 2009, the frozen funds in Plaintiff's Wyatt account ($1089.05) were deducted from the account to pay restitution.

Plaintiff alleges that he made several attempts to have the funds in his Wyatt account sent to the ACI, including having an attorney contact Defendant Jean Singleton, Wyatt Programs Director; having an ACI counselor contact Wyatt officials; writing to each of the Defendants; having a United States Marshal call Defendant Major Botelho; and having an ACI Deputy Warden contact Defendant Assistant Warden Tapley. Plaintiff alleges that none of the attempts were successful, with the only response from Wyatt officials being that he owed Wyatt restitution and Wyatt was going to keep his funds.

2

## II. Other Issues

Plaintiff also alleges that on August 7, 2009, while he was housed at Wyatt, his Wyatt account was debited $48.88 for a commissary purchase which he never received, and that the Defendant Inmate Accounts Supervisor (unnamed) is responsible for the improper debit. In addition, Plaintiff complains that his personal property, including clothing valued at $200 and other personal items valued at $111.15, were never sent to him at the ACI. He alleges that Defendant Botelho stated that Plaintiff's clothing and other personal property had been mailed to an address in Providence with which Plaintiff was not familiar rather than to Plaintiff at the ACI.

## III. Causes of Action

Plaintiff alleges that he did not destroy the Wyatt property he was charged with destroying. He urges that Defendants deprived him of numerous procedural protections in connection with the guilty finding regarding the charges, in violation of Wyatt's own policies and procedures. Plaintiff therefore concludes that Defendants' actions violated his federal and state constitutional rights, as well as Wyatt policies. With respect to the federal claims, Plaintiff alleges that Defendants' actions, taken under the color of state law, violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## IV. Relief Sought

In the Complaint, Plaintiff seeks relief including: (i) injunctive relief ordering Defendants to immediately transfer $1,137.93 to Plaintiff ($48.88 for the allegedly improper commissary charge plus $1089.05 for the allegedly improper restitution); (ii) declaratory relief stating that Defendants violated Plaintiff's rights; (iii) compensatory damages for the loss of Plaintiff's clothing and personal property and investment capital ($1,395.00, representing a 15 % "rollover rate" on the $1,137.93 Defendants wrongfully kept from him for the six months between August and December); (iv) nominal damages; (v) punitive damages; and (vi) costs and legal fees.

## DISCUSSION

### I. Screening Under § 1915(e)(2)

In connection with proceedings *in forma pauperis*, § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action, *inter alia*, fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) is identical to the legal standard used when ruling on a Rule 12(b)(6) motion. *See Pelumi v. Landry*, No. 08-107, 2008 WL

3

2660968, at *2 (D.R.I., June 30, 2008). In making this determination, the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A claim fails to state a claim for which relief may be granted if the factual allegations fail to "raise [plaintiff's] right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); *see also Iqbal*, 129 S.Ct. at 1949-1951 (discussing the plausibility requirement); Fed.R.Civ.P. 8(a)(2).

## II. § 1983 Constitutional Law Claims

Plaintiff has filed this action pursuant to § 1983 as well as state law. In order to succeed in a § 1983 action, a plaintiff must show that the conduct complained of (i) was committed by a person acting under color of state law and (ii) deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). With respect to the first prong, the Defendants here are employees of a private entity, the Central Falls Detention Facility Corporation, rather than government employees. However, this Court has previously ruled that the employees of a corporation operating Wyatt should be considered as acting under state law for purposes of § 1983. *LaCedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d 114, 140-142 (D.R.I. 2004)(Judge Lagueux)(as the private entity operating Wyatt and the individual prison guards there carry out a traditional public function and derive their authority over plaintiff from state law, they act under color of state law for purposes of § 1983).[2] With respect to the second prong, however, although Plaintiff urges that Defendants' actions violated his federal constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, a review of the Complaint reveals that Plaintiff has failed to state a claim on which relief may be granted regarding any of these claims.

### A. Fourteenth Amendment Due Process Claims

As his primary claim, Plaintiff complains that Defendants wrongfully deprived him of funds in his Wyatt account as well as his clothes and other personal property without adequate

---

[2] Prior to *LaCedra*, this Court found that the employees at Wyatt operated under federal law, and thus were subject to claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-97, 91 S.Ct. 1999 (1971). *Sarro v. Cornell Corrections, Inc.*, 248 F.Supp.2d 52, 58 (D.R.I. 2003)(Judge Torres). However, the analysis of Plaintiff's claims that Defendants violated his federal constitutional rights would be the same in an action under *Bivens* and § 1983. *See LaCedra*, 334 F.Supp.2d at 137.

procedural protections. The Due Process Clause of the Fourteenth Amendment protects against state deprivation of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). Prisoners have a protected interest in their personal property, including their prison trust account. *See Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985); *Barber v. Wall*, No. 01-026, 2002 WL 1888981, at * 3 (D.R.I. July 16, 2002), *aff'd*, 66 Fed.Appx. 215 (1st Cir. 2003); *cf. Young v. Wall*, 359 F.Supp.2d 84, 91 (D.R.I. 2005)(ACI inmates have a limited property right in the amounts deposited in their inmate trust accounts). While corrections authorities clearly have the right to debit a prisoner's trust account to enforce a restitution order of a prison disciplinary board, minimum procedural due process safeguards generally must be provided in connection with any such board order. *See Barber*, 66 Fed.Appx. at 215; *Reynolds v. Wagner*, 128 F.3d 166, 179 (3rd Cir. 1997).

Nonetheless, not all deprivations of property absent adequate procedural protections rise to the level of a constitutional violation. Specifically, as established by the *Parratt-Hudson* doctrine, "[w]hen a deprivation of a property interest is occasioned by *random and unauthorized conduct by state officials*, ... the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." *Hadfield v. McDonough*, 407 F.3d 11, 19 (1st Cir. 2005)(internal quotations and citation omitted)(emphasis added). Where a deprivation results from random and unauthorized conduct by state officials, whether negligent or intentional, "additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected [property] interest." *Chmielinski v. Mass. Office of the Commissioner of Probation*, 513 F.3d 309, 315 (2008) (quoting *Mard v. Town of Amherst*, 350 F.3d 184, 193 (1st Cir. 2003)); *see also Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194 (1984)(regarding intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908 (1981)(regarding negligent conduct), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct. 662 (1986). The plaintiff has the burden of establishing that post-deprivation remedies are unavailable. *Riordan v. Martin*, 51 F.3d 264, at *1 (1st Cir. 1995).

The Supreme Court and the First Circuit have cautioned courts to "scrutinize carefully" the issue of whether state officials' conduct is random and unauthorized within the meaning of *Parratt* and *Hudson*. *Lowe v. Scott*, 959 F.2d 323, 341 (quoting *Zinermon v. Burch*, 494 U.S. 113, 139, 110 S.Ct. 975 (1990)). "An act is random and unauthorized when it is a flaw in a government official's conduct rather than a flaw in the underlying state law itself." *Ciampi v. Zuczek*, 598 F.Supp.2d 257, 263 (D.R.I. 2009); *see also Hadfield*, 407 F.3d at 20 ("[A]

5

government official has committed a random and unauthorized act when he or she misapplies state law to deny an individual the process due under a correct application of state law").

### 1. Commissary Purchase and Loss of Personal Property

Here, Plaintiff's claims regarding the deduction from his Wyatt account and the loss of his personal property, including his clothes, clearly fail to state cognizable claims under the Fourteenth Amendment. Plaintiff does not assert or imply that either (i) the allegedly erroneous debiting of Plaintiff's Wyatt account for a purchase he did not make or (ii) the mailing of Plaintiff's clothing and other personal property to the wrong address were in accordance with Wyatt policy or state law. In fact, Plaintiff alleges in the Complaint that his clothes and property were not sent with him when the United States Marshals transferred him from Wyatt to the ACI, "as is policy in pre-arranged transfers with and to the ACI from Wyatt." Cmpt. at ¶ 12. Therefore, regardless of whether such actions were negligent or intentional, as they were not pursuant to state law or policy, they were random and unauthorized.

Accordingly, the analysis turns to whether state law provides adequate post-deprivation remedies. Here, as it appears that adequate post-deprivation remedies are available under state law, such as tort law, and Plaintiff does not allege that post-deprivation state remedies are unavailable, Plaintiff does not have a viable procedural due process claim here. *See Lowe*, 959 F.2d at 343; *see also Sawyer v. Green*, 316 Fed.Appx. 715, 717 (10th Cir. 2008)(allegations that defendants made erroneous deductions to plaintiff's jail account failed to state a due process claim where deductions were unauthorized and state provided adequate post-deprivation remedy); *Maulsby v. Beard*, 223 Fed.Appx. 192, 193-94 (3rd Cir. 2007)(prisoner's complaints that defendant officers broke or stole his property failed to allege a due process claim because adequate post-deprivation remedies, including prison grievance procedure and state tort law for conversion of property, were available); *Pelumi*, 2008 WL 2660968, at * 4 (plaintiff failed to state a claim that court clerk violated his due process rights by stealing his money because adequate post-deprivation remedies, such as state tort common law, existed under Rhode Island law). Accordingly, I recommend Plaintiff's Fourteenth Amendment Due Process claims regarding both the debiting of his Wyatt account for a commissary purchase he did not receive and the loss of his personal property be DISMISSED with prejudice.

### 2. Restitution

Plaintiff's allegations that Defendants did not afford him adequate due process prior to freezing and then deducting funds from his Wyatt account as restitution also fail to state

6

cognizable claims. Plaintiff urges, and the documents he filed with his Complaint indicate, that the policies and procedures at Wyatt require procedural protections for inmates charged with disciplinary infractions including (i) the filing of the disciplinary report within 24 hours of the incident; (ii) holding a disciplinary hearing within seven days of the incident; (iii) serving the charged prisoner with a copy of the notice of hearing and disciplinary report; (iv) reading the prisoner his rights regarding the disciplinary hearing process; (v) providing the prisoner with rights at the disciplinary hearing including the right to remain silent, waive a hearing, be present, call witnesses, have staff representation or assistance, and present documentary evidence and a written statement; (vi) affording the prisoner a three-member disciplinary hearing committee unaffiliated with the incident; and (vii) advising the prisoner of the disciplinary hearing findings and allowing him to appeal the same. *See* Dckt. # 4-1, pp. 2 (Notice of Hearing) & 5 (Disciplinary Report). Plaintiff complains that Defendants violated his due process rights by acting in contravention of these policies. Thus, Plaintiff's claims involve the random and unauthorized actions of Defendants.

Therefore, as it appears that state law provides adequate post-deprivation remedies, such as through actions sounding in tort law, and Plaintiff does not allege the unavailability of post-deprivation state remedies, Plaintiff does not have a viable procedural due process claim here. *See Lowe*, 959 F.2d at 343. Accordingly, I recommend Plaintiff's Fourteenth Amendment Due Process claims regarding the freezing and deducting of funds from his Wyatt account to pay restitution be DISMISSED without prejudice.

**B.  Fourth, Fifth, and Eighth Amendment Claims**

**1.  Fourth Amendment**

First, the Fourth Amendment is inapplicable in this situation. The Fourth Amendment protects against the unreasonable search and seizure by government officials where persons have legitimate expectations of privacy. *See Hudson*, 468 U.S. at 530 (finding the search of prison cells does not implicate the Fourth Amendment because prisoners have no reasonable expectation of privacy in their cells). "[T]he Courts that have addressed the question of a seizure of an inmate's property have analyzed such a deprivation under the Due Process rubric." *Baasi v. Fabian*, No. 09-781, 2010 WL 924384, at *17 (D.Minn. Mar. 11, 2010); *see also Hudson*, 468 U.S. at 539, O'Connor, J., concurring ("Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment

7

litigation.... The Due Process and Takings Clauses of the Fifth and Fourteenth Amendments stand directly in opposition to state action intended to deprive people of their legally protected property interests"). Accordingly, Plaintiff fails to state a claim on which relief may be granted under the Fourth Amendment, and I recommend that such claims be DISMISSED with prejudice.

### 2. Fifth Amendment

Second, Plaintiff's claims under the Takings Clause of the Fifth Amendment also fail here. The Takings Clause, applicable to the states through the Fourteenth Amendment, provides that private property taken for public use without just compensation is a violation of the Constitution. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446 (1980). A takings claim must be based on the government's rightful exercise of its property, contract, or regulatory powers, and, thus, does not arise when rights or property have been impaired through unlawful government action. *Golder v. United States*, 15 Cl.Ct. 513, 518 (1988); *Barber*, 66 Fed.Appx. at 215. As Plaintiff here avers that the removal of the monies from his Wyatt account and the loss of his personal property, without adequate procedures, were in violation of the law, his claim based upon the Takings Clause of the Fifth Amendment is misplaced. *See Barber*, 66 Fed.Appx. at 215. Accordingly, Plaintiff fails to state a claim on which relief may be granted under the Takings Clause, and I recommend such claims be DISMISSED with prejudice.

### 3. Eighth Amendment

Finally, Plaintiff also fails to state a viable claim for relief under the Eighth Amendment. Presumably Plaintiff is arguing that Defendants' failure to send him his money and/or personal property amounted to cruel and unusual punishment in violation of the Eighth Amendment. To allege an Eighth Amendment claim, a plaintiff must plead facts which establish both an objective component, that he was forced to endure "extreme deprivations," and a subjective component, that the defendant acted with "deliberate indifference" to such conditions. *See Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992).[3]

---

[3] To the extent Plaintiff was a pretrial detainee during the period about which he complains, the Fourteenth Amendment, rather than the Eighth Amendment, applies. *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002). However, a similar two-prong analysis regarding objective deprivations and subjective deliberate indifference applies under both amendments.

Here, Plaintiff's allegations fail to rise to the level of a constitutional claim. The denial of his funds and personal property were not "deprivations denying 'the minimal civilized measure of life's necessities,' ... sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). Accordingly, Plaintiff fails to state a claim on which relief may be granted under the Eighth Amendment, and I recommend such claims be DISMISSED with prejudice.

### III. Supplemental State Law Claims

Having recommended that the federal claims be dismissed, I further recommend that the Court decline to exercise jurisdiction over Plaintiff's remaining supplemental state law claims. *See* 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *see also Menebhi v. Mattos*, 183 F.Supp.2d 490, 505-506 (D.R.I. 2002) ("when all federal claims are eliminated from the case before trial, in the usual case the balance of factors to be considered should lead the court to conclude that the 'state claims should be dismissed as well'")(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). However, as Plaintiff may have viable state law claims, I recommend these claims be DISMISSED without prejudice for want of jurisdiction to permit Plaintiff the freedom to pursue remedies for his state law claims in state court.

### CONCLUSION

In summary, I find that Plaintiff's constitutional law claims fail to state claims on which relief may be granted and recommend that such claims be DISMISSED. Specifically, I recommend that Plaintiff's claims under the Fourteenth Amendment regarding the loss of his personal property as well as all of his claims under the Fourth, Fifth, and Eighth Amendments be DISMISSED with prejudice. I also recommend that Plaintiff's procedural due process claims regarding the freezing and deduction of funds in his Wyatt account to pay restitution be DISMISSED without prejudice. Thus, having recommended that all of the federal claims in the Complaint be dismissed, I further recommend that Plaintiff's state law claims be DISMISSED without prejudice for lack of jurisdiction.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed.R.Civ.P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Jacob Hagopian
Jacob Hagopian
Senior United States Magistrate Judge
April 27, 2010